BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
JOSHUA O. MAUSNER (Cal. Bar No. 260251)
Assistant United States Attorneys
Chief, Violent and Organized Crime Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0619
    Facsimile: (213) 894-3713
    E-mail:    joshua.mausner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>        v.<br><br>OLOF KYROS GUSTAFSSON,<br>  aka "Sir Olof Gustafsson,"<br>  aka "El Silencio,"<br><br>      Defendant. | No. 2:23-CR-00576-FLA<br><br>PLEA AGREEMENT FOR DEFENDANT OLOF KYROS GUSTAFSSON |

1.    This constitutes the plea agreement between OLOF KYROS GUSTAFSSON, also known as "Sir Olof Gustafsson," and "El Silencio," ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

1        a.    At the earliest opportunity requested by the USAO and

2  provided by the Court, appear and plead guilty to Counts One, Two,

3  Eleven, Fourteen, Fifteen, and Fifty-Six of the indictment in United

4  States v. Olof Kyros Gustafsson, CR No. 23-00576-FLA, which charge

5  defendant with Conspiracy to Commit Wire Fraud and Mail Fraud, in

6  violation of 18 U.S.C. § 1349; Wire Fraud, in violation of 18 U.S.C.

7  § 1343; Mail Fraud, in violation of 18 U.S.C. § 1341; Conspiracy to

8  Commit Money Laundering, in violation of 18 U.S.C. § 1956(h);

9  Concealment Money Laundering, in violation of 18 U.S.C.

10  § 1956(a)(1)(B)(i); and International Concealment Money Laundering,

11  in violation 18 U.S.C. § 1957(a)(2)(B)(i).

12        b.    Not contest facts agreed to in this agreement.

13        c.    Abide by all agreements regarding sentencing contained

14  in this agreement.

15        d.    Appear for all court appearances, surrender as ordered

16  for service of sentence, obey all conditions of any bond, and obey

17  any other ongoing court order in this matter.

18        e.    Not commit any crime; however, offenses that would be

19  excluded for sentencing purposes under United States Sentencing

20  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

21  within the scope of this agreement.

22        f.    Be truthful at all times with the United States

23  Probation and Pretrial Services Office and the Court.

24        g.    Pay the applicable special assessments at or before

25  the time of sentencing unless defendant has demonstrated a lack of

26  ability to pay such assessments.

27        h.    At or before the time of sentencing, make a

28  prejudgment payment by delivering a certified check or money order to

2

the Fiscal Clerk of the Court in the amount of $25,000 to be applied
to satisfy defendant's anticipated criminal debt.  Payments may be
made to the Clerk, United States District Court, Fiscal Department,
255 East Temple Street, Room 1178, Los Angeles, California 90012.

i.    Defendant agrees that any and all criminal debt
ordered by the Court will be due in full and immediately.  The
government is not precluded from pursuing, in excess of any payment
schedule set by the Court, any and all available remedies by which to
satisfy defendant's payment of the full financial obligation,
including referral to the Treasury Offset Program.

j.    Complete the Financial Disclosure Statement on a form
provided by the USAO and, within 30 days of defendant's entry of a
guilty plea, deliver the signed and dated statement, along with all
of the documents requested therein, to the USAO by either email at
usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial
Litigation Section at 312 North Spring Street, 11th Floor, Los
Angeles, CA 90012.  Defendant agrees that defendant's ability to pay
criminal debt shall be assessed based on the completed Financial
Disclosure Statement and all required supporting documents, as well
as other relevant information relating to ability to pay.

k.    Authorize the USAO to obtain a credit report upon
returning a signed copy of this plea agreement.

l.    Consent to the USAO inspecting and copying all of
defendant's financial documents and financial information held by the
United States Probation and Pretrial Services Office.

3.    Defendant further agrees:

a.    To forfeit all right, title, and interest in and to
any and all monies, properties, and/or assets of any kind, derived

from or acquired as a result of, used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following:

i.    $396,956 on deposit in Klarna Bank, A.B. account number K688028 (the "Forfeitable Property").

b.    To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the property.

c.    To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.    Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Property.  Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

e.    Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

f.    Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

4

g.    To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

h.    To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.    That forfeiture of the Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

j.    That the Preliminary Order of Forfeiture shall become final as to the defendant upon entry.

k.    With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that forfeiture of the Forfeitable Property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

4.    Defendant further agrees to:

a.   Fully waive and agree to final and permanent revocation of his Lawful Permanent Resident status, or any other immigration status in the United States, including taking any necessary affirmative steps for full and permanent revocation of his legal status to be present in the United States.

b.   Defendant acknowledges that he is currently subject to a criminal investigation and forthcoming arrest warrant from France for alleged criminal conduct that is separate and unrelated to the conduct for which defendant is pleading guilty in the above-captioned matter.  In the event France requests the United States to extradite defendant for prosecution on said alleged conduct in compliance with the terms of the U.S.-France Extradition Treaty, defendant agrees to fully waive and agree to extradition to France in response to such a request.

<u>THE USAO'S OBLIGATIONS</u>

5.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.  Defendant further agrees that he may be treated as if he had been convicted of the dismissed charges for purposes of U.S.S.G. § 1B1.2(c), regardless of whether the factual basis below would be sufficient to satisfy all

elements of each charge.  Defendant waives the right to challenge the sufficiency of the factual basis as to any element of any dismissed charge.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   At the time of sentencing, provided that defendant has complied fully and completely with the obligations and conditions imposed in paragraphs 2-4 above, the government will recommend that defendant be sentenced to a term of imprisonment no higher than 33 months.  The parties also agree that the government may respond to a request by defendant for a sentence below the government's recommendation.

<u>NATURE OF THE OFFENSES</u>

6.   Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, conspiracy to commit wire or mail fraud, in violation of Title 18, United States Code, Section 1349, the following must be true: 1) There was an agreement between two or more persons to commit wire or mail fraud; and 2) Defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

7.   Defendant understands that for defendant to be guilty of the crime charged in Count Two, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, the following must be true: (1) Defendant knowingly devised or participated in a scheme or

plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts.  Deceitful statements or half-truths may constitute false or fraudulent representations; (2) The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) Defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) Defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

8.    Defendant understands that for defendant to be guilty of the crime charged in Count Eleven, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, the following must be true: (1) Defendant knowingly devised or participated in a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts.  Deceitful statements of half-truths may constitute false or fraudulent representations; (2) The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) Defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and (4) Defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

9.    Defendant understands that for defendant to be guilty of the crime charged in Count Fourteen, that is conspiracy to commit money laundering, in violation of Title 18, United States Code,

Section 1956(h), the following must be true: (1) There was an agreement between two or more people to commit money laundering; and (2) Defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.  The money laundering objects of the conspiracy, in turn, have the following elements:

  a.  Concealment money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), has the following elements: (1) An individual conducted a financial transaction involving property that represented the proceeds of wire or mail fraud; (2) The individual knew that the property represented the proceeds of some form of unlawful activity; and (3) The individual knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds.  A financial transaction is a transaction involving the movement of funds by wire or other means, one or more monetary instruments, or the use of a financial institution that is engaged in, or the activities of which affect interstate or foreign commerce in any way.  The phrase "knew that the property represented the proceeds of some form of unlawful activity" means that the individual knew that the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony.

  b.  International concealment money laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i), has the following elements: (1) An individual transmitted money from a place inside the United States to or through a place outside the United States; (2) The individual knew that the money represented the proceeds of some form of unlawful activity; and (3) The individual

knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

       c.   Transactional money laundering, in violation of Title 18, United States Code, Section 1957, has the following elements: (1) An individual knowingly engaged or attempted to engage in a monetary transaction; (2) The individual knew that the monetary transaction involved criminally derived property; (3) The property had a value greater than $10,000; (4) The property was, in fact, derived from wire or mail fraud; and (5) The transaction occurred in the United States.

    10.  Defendant understands that for defendant to be guilty of the crime charged in Count Fifteen, that is, concealment money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), the following must be true: (1) Defendant conducted a financial transaction involving property that represented the proceeds of wire or mail fraud; (2) Defendant knew that the property represented the proceeds of some form of unlawful activity; and (3) Defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds.  A financial transaction is a transaction involving the movement of funds by wire or other means, one or more monetary instruments, or the use of a financial institution that is engaged in, or the activities of which affect interstate or foreign commerce in any way.  The phrase "knew that the property represented the proceeds of some form of unlawful activity" means that the individual knew that the property involved in the transaction

1  represented proceeds from some form, though not necessarily which

2  form, of activity that constitutes a felony.

3      11.   Defendant understands that for defendant to be guilty of

4  the crime charged in Count Fifty-Six, that is, international

5  concealment money laundering, in violation of Title 18, United States

6  Code, Section 1956(a)(2)(B)(i), the following must be true: (1)

7  Defendant transmitted money from a place inside the United States to

8  or through a place outside the United States; (2) Defendant knew that

9  the money represented the proceeds of some form of unlawful activity;

10  and (3) Defendant knew that the transaction was designed in whole or

11  in part to conceal or disguise the nature, location, source,

12  ownership, or control of the proceeds.

13                    PENALTIES AND RESTITUTION

14      12.   Defendant understands that the statutory maximum sentence

15  that the Court can impose for each violation of Title 18, United

16  States Code, Sections 1349, 1343, and 1341 is: 20 years imprisonment;

17  a 3-year period of supervised release; a fine of $250,000 or twice

18  the gross gain or gross loss resulting from the offense, whichever is

19  greatest; and a mandatory special assessment of $100.

20      13.   Defendant understands that the statutory maximum sentence

21  that the Court can impose for each violation of Title 18, United

22  States Code, Sections 1956(h), 1956(a)(1)(B)(i), and 1956(a)(2)(B)(i)

23  is: 20 years imprisonment; a 3-year period of supervised release; a

24  fine of $500,000 or twice the gross gain or gross loss resulting from

25  the offense, whichever is greatest; and a mandatory special

26  assessment of $100.

27      14.   Defendant understands, therefore, that the total maximum

28  sentence for all offenses to which defendant is pleading guilty is:

120 years imprisonment; a 3-year period of supervised release; a fine of $2,250,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $600.

15. Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts. The parties currently believe that the applicable amount of restitution is approximately $1,300,193.41, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

16. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the

offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

17.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

18.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an

13

absolute certainty the effect of his convictions on his immigration status.  As noted above in paragraph 4(a) above, by virtue of this agreement, defendant has agreed to fully waive, and agree to final and permanent revocation of, his Lawful Permanent Resident status or any other immigration status in the United States, including taking any necessary affirmative steps for full and permanent revocation of his legal status to be present in the United States, the result of which will be that defendant will have no legal status in, and will be removed from, the United States.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

19.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 21 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Escobar, Inc. was a corporation registered in the Commonwealth of Puerto Rico.  Escobar, Inc. held successor in interest rights to the persona and legacy of Pablo Escobar, the deceased Colombian narcoterrorist and head of the Medellin Cartel.  Escobar, Inc. used the likeness and persona of Pablo Escobar to market and sell

purported consumer products to the public.  Defendant was the Chief Executive Officer of Escobar, Inc.

Wire and Mail Fraud Conspiracy and Scheme

Beginning on a date unknown, but no later than in or around July 2019, and continuing through on or about November 21, 2023, in Los Angeles, Orange, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, including the countries of Sweden, the United Arab Emirates, Estonia, and Spain, defendant conspired with others, and devised and executed a scheme, to commit wire fraud, in violation of Title 18, United States Code, Section 1343, and mail fraud, in violation of Title 18, United States Code, Section 1341.

As part of the conspiracy and scheme to commit wire and mail fraud, defendant and his co-conspirators would identify existing products in the marketplace that were being manufactured and sold to the public.  Defendant would then use the Escobar persona to market and advertise similar and competing products purportedly being sold by Escobar, Inc., including advertising the competing Escobar, Inc. products at a price substantially lower than the existing products, targeting victims residing in the Central District of California as well as throughout the United States and the world.

Defendant and his co-conspirators would communicate with purported Escobar, Inc. customers, located in the Central District of California and elsewhere, including by using email in interstate and foreign commerce, and would receive payments from customers for purported Escobar, Inc. products, including payments through payment processors such as PayPal, Klarna, CC Bill, Stripe, Coinbase, and Coinpayments, among others, as well as through mailed and deposited

checks and direct bank wire transfers made by customers, including through Fedwire, Swift, and other transfers in interstate and foreign commerce.  These payments from purported customers were made to various accounts owned and operated by defendant and his co-conspirators, both in the United States and abroad.

In actuality, however, despite receiving payments from customers who intended to purchase Escobar, Inc. products, defendant and his co-conspirators did not deliver the Escobar, Inc. products to paying customers, as those products did not exist.

Defendant and his co-conspirators would then transfer and launder the funds paid by customers through various bank accounts, including accounts in the Central District of California and elsewhere in the United States and abroad, ultimately to accounts owned by defendant, his family members, and others, who would then use the funds for their own personal use.

Examples of purported Escobar, Inc. products that were marketed and sold, but were not delivered to customers, included the following:

Escobar Flamethrower

In or around July 2019, defendant began advertising the Escobar Flamethrower for sale to customers.  The Escobar Flamethrower was modeled after the "Not a Flamethrower" marketed and sold by The Boring Company for $500.  Defendant and his co-conspirators marketed the purported Escobar Flamethrower for sale for $249.  Defendant and his co-conspirators sold and accepted payment from customers for the Escobar Flamethrower, but the Escobar Flamethrowers were not delivered to paying customers.

16

### Escobar Fold Phone

In or around December 2019, defendant began advertising the Escobar Fold Phone for sale to customers.  The Escobar Fold Phone was marketed as being designed in the United States, manufactured in Hong Kong, and available for sale for $349 via the Escobar, Inc. website.  Defendant and his co-conspirators accepted payment from customers for the Escobar Fold Phone, but the phones were not delivered to paying customers.

### Escobar Fold 2 Phone

In or around February 2020, defendant began advertising the "upgraded" Escobar Fold 2 Phone for sale to customers.  The Escobar Fold 2 Phone was marketed as a competitor to the Samsung Galaxy Fold phone, and was available for sale for $400 via the Escobar, Inc. website.  Defendant and his co-conspirators sold and accepted payment from customers for the Escobar Fold 2 Phone, but phones were not delivered to paying customers.

### Escobar Gold 11 Pro Phone

In or around May 2020, defendant began advertising the Escobar Gold 11 Pro Phone.  The Escobar Gold 11 Pro Phone was marketed as a refurbished Apple iPhone 11 Pro, plated in 24 karat gold, available for sale for $500 via the Escobar, Inc. website.  Defendant and his co-conspirators sold and accepted payment from customers for the Escobar Gold 11 Pro Phone, but phones were not delivered to paying customers.

### Escobar Cash

In or around December 2021, defendant began advertising Escobar Cash, which was marketed as the world's first "physical cryptocurrency," which was available for sale in several

denominations at a U.S. dollar conversion rate of 1/1000th of U.S. dollar face value.  Defendant and his co-conspirators sold and accepted payment from customers for Escobar Cash, but did not deliver the product to all paying customers.

In furtherance of the scheme, and to further defraud customers, defendant and his co-conspirators would send crudely-made samples of purported Escobar, Inc. products to online technology reviewers and social media influencers in order to attempt to increase demand among the public for the purported Escobar, Inc. products.  For example, defendant sent Samsung Galaxy Fold Phones wrapped in gold foil and disguised as Escobar, Inc. phones to online technology reviewers to attempt to induce victims who watch the online reviews into paying for and purchasing the non-existent Escobar, Inc. products.

Also in furtherance of the scheme, rather than sending customers the products for which they paid, defendant and his co-conspirators would mail to customers a "Certificate of Ownership," or a book or other promotional materials for Escobar, Inc., so that there was record of a mailing from Escobar, Inc. to the customer.  When a paying customer would attempt to obtain a refund when the product was never delivered, defendant and his co-conspirators would fraudulently refer a payment processor to the proof of mailing for the Certificate of Ownership or other mailed promotional materials as proof that the product itself was shipped and received by the customer, such that the refund requests would be denied.  While some refunds were completed by payment processors, the vast majority were not due defendant's fraudulent representations.

Defendant and his co-conspirators operated the Escobar, Inc. scheme from outside the United States, and victimized hundreds of

18

purported customers both inside the United States and abroad using interstate wires and mailings, including a July 11, 2019 wire payment through PayPal of $249 from victim D.R. from the Central District of California to an Escobar, Inc. PayPal account, as well as a July 13, 2019 mailing of a "Certificate of Ownership" to victim D.R. within the Central District of California.  The total intended loss amount for the conspiracy and schemes to defraud was at least $1,300,193.41.

Money Laundering Conspiracy and Scheme

In addition to wire and mail fraud, defendant also conspired and engaged in money laundering to transfer and conceal the proceeds of the fraud schemes.

Beginning on a date unknown, but no later than in or around July 2019, and continuing through on or about November 21, 2023, in Los Angeles, Orange, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, including the countries of Sweden, the United Arab Emirates, and Spain, defendant conspired with others to knowingly and intentionally commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), (a)(2)(B)(i), and 1957.

As part of the money laundering conspiracy, defendant and his co-conspirators would cause bank accounts to be opened under their own names and names of entities they controlled to be used as funnel accounts, that is, bank accounts into which they would deposit and withdraw proceeds derived from wire fraud and mail fraud, so as to conceal and disguise the nature, location, source, ownership, and control of the proceeds.

Defendant and his co-conspirators would then transfer, deposit, or cause victims to deposit proceeds derived from the fraud schemes

into the funnel accounts, and then withdraw or transfer the
fraudulently obtained funds from the funnel accounts, including
through cash withdrawals, check cashing, writing checks, or
transferring funds into further accounts under their control, in the
United States and elsewhere around the world, including in Sweden and
the United Arab Emirates, and ultimately making payments to
themselves and family members for their own personal use.

Transactions in furtherance of the money laundering conspiracy
included, but was not limited to: (1) a $10,000 wire transfer on
October 11, 2019 from a J.P. Morgan Chase Bank account ending in 4484
to a Wells Fargo Bank account ending in 8975, (2) a $9,950 wire
transfer on October 11, 2019 from the Wells Fargo Bank account ending
in 8975 to an Abu Dhabi Islamic Bank account ending in 2788 in the
United Arab Emirates, and (3) a $20,295 wire transfer on December 17,
2019 from a Nordea Bank account ending in 3922 in Sweden to the Wells
Fargo Bank account ending in 8975.

<u>SENTENCING FACTORS</u>

20.  Defendant understands that in determining defendant's
sentence the Court is required to calculate the applicable Sentencing
Guidelines range and to consider that range, possible departures
under the Sentencing Guidelines, and the other sentencing factors set
forth in 18 U.S.C. § 3553(a).  Defendant understands that the
Sentencing Guidelines are advisory only, that defendant cannot have
any expectation of receiving a sentence within the calculated
Sentencing Guidelines range, and that after considering the
Sentencing Guidelines and the other § 3553(a) factors, the Court will
be free to exercise its discretion to impose any sentence it finds

appropriate up to the maximum set by statute for the crimes of conviction.

21. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [USSG § 2B1.1(a)(1)] |
| Loss > $550,000 | +14 | [USSG § 2B1.1(b)(1)(I)] |
| 10 or More Victims | +2 | [USSG § 2B1.1(b)(2)(A)(i)] |
| Scheme Outside U.S. | +2 | [USSG § 2B1.1(b)(10)] |
| § 1956 Conviction | +2 | [USSG § 2S1.1(b)(2)(B)] |
| Zero-Point Offender | -2 | [USSG § 4C1.1] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate. Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2. If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

22. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

23. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

24. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b.    The right to a speedy and public trial by jury.

c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

i.    Having been fully advised by defendant's attorney regarding the requirements of venue with respect to the offenses to which defendant is pleading guilty, to the extent the offenses to which defendant is pleading guilty were committed, begun, or completed outside the Central District of California, defendant knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have to be prosecuted only in the district where the offenses to which defendant is

pleading guilty were committed, begun, or completed; and (b) any defense, claim, or argument defendant could raise or assert based upon lack of venue with respect to the offenses to which defendant is pleading guilty.

## WAIVER OF APPEAL OF CONVICTION

25.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND WAIVER OF COLLATERAL ATTACK

26.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 22 (after reductions for acceptance of responsibility) and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $1,300,193.41; (f) the term of

probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

27. Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

28. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 33 months, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $1,300,193.41.

WAIVER OF RIGHTS CONCERNING PLEA COLLOQUY AND FACTUAL BASIS

29.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.  Defendant further agrees that this paragraph of the agreement is severable.  Thus, defendant's waivers are binding and effective even if, subsequent to defendant's signing this agreement, defendant declines to plead guilty, the Court declines to accept his guilty plea, or, if this agreement is of the type described in Federal Rule of Criminal Procedure 11(c)(1)(A) or (c)(1)(C), the Court rejects this agreement.  Defendant also agrees that his waivers are binding and effective even if some other portion of this agreement is found to be invalid by this Court or the Ninth Circuit.

RESULT OF WITHDRAWAL OF GUILTY PLEA

30.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations

25

will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

31.  Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining counts of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

## EFFECTIVE DATE OF AGREEMENT

32.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

33.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of

1  defendant's obligations under this agreement ("a breach"), the USAO

2  may declare this agreement breached.  All of defendant's obligations

3  are material, a single breach of this agreement is sufficient for the

4  USAO to declare a breach, and defendant shall not be deemed to have

5  cured a breach without the express agreement of the USAO in writing.

6  If the USAO declares this agreement breached, and the Court finds

7  such a breach to have occurred, then: (a) if defendant has previously

8  entered guilty pleas pursuant to this agreement, defendant will not

9  be able to withdraw the guilty pleas, and (b) the USAO will be

10 relieved of all its obligations under this agreement.

11     34.  Following the Court's finding of a knowing breach of this

12 agreement by defendant, should the USAO choose to pursue any charge

13 that was either dismissed or not filed as a result of this agreement,

14 then:

15          a.   Defendant agrees that any applicable statute of

16 limitations is tolled between the date of defendant's signing of this

17 agreement and the filing commencing any such action.

18          b.   Defendant waives and gives up all defenses based on

19 the statute of limitations, any claim of pre-indictment delay, or any

20 speedy trial claim with respect to any such action, except to the

21 extent that such defenses existed as of the date of defendant's

22 signing this agreement.

23          COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

24                         OFFICE NOT PARTIES

25     35.  Defendant understands that the Court and the United States

26 Probation and Pretrial Services Office are not parties to this

27 agreement and need not accept any of the USAO's sentencing

28

1  recommendations or the parties' agreements to facts or sentencing

2  factors.

3      36.  Defendant understands that both defendant and the USAO are

4  free to: (a) supplement the facts by supplying relevant information

5  to the United States Probation and Pretrial Services Office and the

6  Court, (b) correct any and all factual misstatements relating to the

7  Court's Sentencing Guidelines calculations and determination of

8  sentence, and (c) argue on appeal and collateral review that the

9  Court's Sentencing Guidelines calculations and the sentence it

10  chooses to impose are not error, although each party agrees to

11  maintain its view that the calculations in paragraph 21 are

12  consistent with the facts of this case.  While this paragraph permits

13  both the USAO and defendant to submit full and complete factual

14  information to the United States Probation and Pretrial Services

15  Office and the Court, even if that factual information may be viewed

16  as inconsistent with the facts agreed to in this agreement, this

17  paragraph does not affect defendant's and the USAO's obligations not

18  to contest the facts agreed to in this agreement.

19      37.  Defendant understands that even if the Court ignores any

20  sentencing recommendation, finds facts or reaches conclusions

21  different from those agreed to, and/or imposes any sentence up to the

22  maximum established by statute, defendant cannot, for that reason,

23  withdraw defendant's guilty pleas, and defendant will remain bound to

24  fulfill all defendant's obligations under this agreement.  Defendant

25  understands that no one -- not the prosecutor, defendant's attorney,

26  or the Court -- can make a binding prediction or promise regarding

27  the sentence defendant will receive, except that it will be within

28  the statutory maximum.

## NO ADDITIONAL AGREEMENTS

38.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

39.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

BILAL A. ESSAYLI
United States Attorney

*Joshua O. Mausner*                          7/11/2025
_____          _____
JOSHUA O. MAUSNER                        Date
Assistant United States Attorney

*Olof K. Gustafsson*                         7/11/2025
_____          _____
OLOF KYROS GUSTAFSSON                    Date
Defendant

                                         7/11/25
_____          _____
MEGHAN BLANCO                            Date
Attorney for Defendant OLOF KYROS
GUSTAFSSON

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.

1  I have discussed the evidence with my attorney, and my attorney has

2  advised me of my rights, of possible pretrial motions that might be

3  filed, of possible defenses that might be asserted either prior to or

4  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

5  of relevant Sentencing Guidelines provisions, and of the consequences

6  of entering into this agreement.  No promises, inducements, or

7  representations of any kind have been made to me other than those

8  contained in this agreement.  No one has threatened or forced me in

9  any way to enter into this agreement.  I am satisfied with the

10  representation of my attorney in this matter, and I am pleading

11  guilty because I am guilty of the charges and wish to take advantage

12  of the promises set forth in this agreement, and not for any other

13  reason.

14  _____        11/7/2025

15  OLOF KYROS GUSTAFSSON                        Date
    Defendant

16

17

18

19  <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

20      I am OLOF KYROS GUSTAFSSON's attorney.  I have carefully and

21  thoroughly discussed every part of this agreement with my client.

22  Further, I have fully advised my client of his rights, of possible

23  pretrial motions that might be filed, of possible defenses that might

24  be asserted either prior to or at trial, of the sentencing factors

25  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

26  provisions, and of the consequences of entering into this agreement.

27  To my knowledge: no promises, inducements, or representations of any

28  kind have been made to my client other than those contained in this

1  agreement; no one has threatened or forced my client in any way to

2  enter into this agreement; my client's decision to enter into this

3  agreement is an informed and voluntary one; and the factual basis set

4  forth in this agreement is sufficient to support my client's entry of

5  guilty pleas pursuant to this agreement.

6

7-11-25

Date

7  MEGHAN BLANCO
   Attorney for Defendant OLOF KYROS
8  GUSTAFSSON

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31